USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/19/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JORGE A. BAR-LEVY and LENIS PAGAN,

                         Plaintiffs,

    -against-

JOANNE GEROW, TOWN OF LIBERTY, and
7 UNKNOWN TOWN OFFICERS,

                         Defendants.

No. 18-cv-9454 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Jorge A. Bar-Levy ("Bar-Levy") and Lenis Pagan ("Pagan") (together, "Plaintiffs"),

both *pro se*, bring this action against Defendants Joanne Gerow ("Gerow"), the Town of Liberty

("Liberty"), and Seven Unknown Town Officers (collectively, "Defendants"). (Compl., ECF No. 1.)

Plaintiffs set forth claims under 42 U.S.C. § 1983 ("Section 1983"), alleging violations of the Fourth

and Fourteenth Amendments of the United States Constitution. (*Id.*)

Presently before the Court is Defendants' motion to dismiss.[1] (ECF No. 11.) For the

following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The following facts are taken from Plaintiffs' complaint and are accepted as true for purposes

of this motion.

In essence, Plaintiffs allege that Defendants conspired to "seize[] property, injure, oppress,

threaten and intimidate" them because of their religious beliefs. (Compl. ¶ 8.) This conspiracy

manifested itself in two distinct ways according to the complaint, which are detailed below.

---

[1] Neither Bar-Levy nor Pagan filed an opposition to Defendants' motion. Therefore, the Court deems Defendants'
motion as unopposed.

*First*, on June 22, 2018, Gerow seized two white German Shepherds belonging to Bar-Levy, which were valued at over $10,000. (*Id.* ⁋ 9.) Gerow was aided by "several unknown people" that allegedly were "acting as members of the KKK and other anti Jewish [sic] vigilante groups." (*Id.*) After taking the dogs, Gerow posted the seizure on Facebook and "requested others to harm [Plaintiffs] and any other Jews living in Sullivan County." (*Id.*) The complaint does not specify where the seizure took place.

*Second*, on June 22, 2018—the same date she and others seized the German Shepherds—Gerow and "7 unknown Town of Liberty officers" (the "Officers") "planted evidence [and] trespass[ed] private property to plant poison and other substances" at an unspecified location. (*Id.* ⁋ 10.) Gerow and the Officers intended to frame Pagan with "violations of County Codes and State Criminal laws." (*Id.*) Several months later, on October 2, 2018, authorities unla[w]fully and falsely arrested" Pagan without probable cause. (*Id.* ⁋ 11.) Authorities carried out the arrest sometime after Gerow apparently "made false accusations" against Pagan about "a previously sick goat." (*Id.*) Plaintiffs further allege that the goat had become sick due to some "unknown substances spread at the farm by [Defendants] and other unknown KKK and anti Jews Vigilantes [sic]." (*Id.*) Specifically, Plaintiffs contend that these entities had been "t[h]rowing poison and other su[b]stances" to get Pagan's animals sick." (*Id.*) Upon Pagan's arrest, over 200 farm animals were seized, including goats, sheep, geese, chickens, pigeons, and ducks." (*Id.*) The arresting authorities did not provide Pagan with documentation about the location of his animals or how he could reobtain them. (*Id.*) Pagan was subsequently charged with five counts of animal cruelty. (*Id.*) The complaint does not specify the ultimate disposition of charges levied against Pagan.

Plaintiffs maintain that the above misconduct is a result of Liberty's policy, practice, and custom of having officers ignore other town officers' illegal conduct. (*Id.* ⁋ 16.) Furthermore, Plaintiffs contend that it is Liberty's policy, practice, and custom to only conduct "minimal

investigation[s]" that are designed to exonerate officers who engage in misconduct. (*Id.* ¶ 17.) Because of this policy, Plaintiffs aver, town officers could "reasonably conclude" that they could make false accusations and bring criminal charges without fear of discipline. (*Id.* ¶ 18.) This policy resulted in a "culture of intimidation and threats against Jews" living in Liberty. (*Id.* ¶ 19.)

**LEGAL STANDARD**

**A. Rule 12(b)(6)**

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In fact, courts must interpret the *pro se* plaintiff's pleadings "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe a *pro se* complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

**B. Section 1983**

Under Section 1983, "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York.*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

## DISCUSSION

### I. Plaintiffs' Fourth Amendment Claims against Individual Defendants

Liberally construed, Plaintiffs' complaint appears to allege, under the Fourth Amendment, a claim by Pagan for false arrest and claims by Bar-Levy and Pagan of wrongful searches and seizures. The Court explores the sufficiency of these claims below.[2]

---

[2]      The Court notes at the outset that Defendants have submitted an Affidavit from Joanne Gerow, as well as supporting documents that were not included with Plaintiffs' complaint. (*See* Decl. of Nicholas A. Pascale, ECF No. 12.) On a motion to dismiss, however, the Court may not "consider factual averments contained in affidavits," *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)), or documents that were neither attached as exhibits, incorporated by reference, or integral to the complaint, *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). As it does not intend to convert Defendants' motion into one for summary judgment, the Court will decline to review Defendants' extraneous material at this time.

## A. Claim of False Arrest

Pagan alleges he was unlawfully arrested "without probable cause" after Gerow "made false accusation[s] against him." (Compl. ¶ 11.) In seeking dismissal, Defendants argue, *inter alia*, that, to the extent Gerow made false accusations against Pagan, she "merely [gave] information" to authorities, which, alone, is not enough to impose liability under Section 1983. (Defs. Mem. of Law in Support of Mot to Dismiss. ("Defs. Mot."), ECF No. 11, at 7.) The Court agrees

"A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." *Nelson v. City of New York*, No. 18 Civ. 4636 (PAE), 2019 WL 3779420, at *5 (S.D.N.Y. Aug. 9, 2019) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996), *cert. denied*, 528 U.S. 946 (1999)). Under New York law, a plaintiff alleging false arrest must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)) (internal quotations omitted).

"To prove intent, a plaintiff must establish the defendant affirmatively procured or instigated the plaintiff's arrest." *Wright v. Musanti*, No. 14-cv-8976 (KBF), 2017 WL 253486, at *9 (S.D.N.Y. Jan. 20, 2017). "Liability may attach only when the defendant has 'affirmatively induced the officer to act, such as [by] taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." *Id.* (quoting *Vlach v. Staiano*, 604 F. App'x 77, 78 (2d Cir. 2015)). "Merely giving information to legal authorities, who are left entirely free to use their own judgment in effecting an arrest, does not constitute intentional confinement." *McGee v. Dunn*, 940 F. Supp. 2d 93, 103 (S.D.N.Y. 2013) (citing *Mitchell v. Home*, 377 F. Supp. 2d 361, 376 (S.D.N.Y. 2005)). And, although a person who "'intentionally provide[s] false information' *to instigate* an arrest by law-enforcement officials" could

be liable under Section 1983, "the provision of false statements . . . to law enforcement personnel, standing alone, is insufficient to establish § 1983 liability." *See Mortiz v. Town of Warwick*, No. 15-CV-5424 (NSR), 2016 WL 3248494, at *3-4 (S.D.N.Y. June 9, 2016) (emphasis added).

Here, although it liberally construes and accepts as true Plaintiffs' allegations, the Court concludes that Plaintiffs have failed to plausibly state a false arrest claim. To be sure, Plaintiffs have alleged that Gerow and others not only provided information to authorities but that such information was intentionally false. (Compl. ¶¶ 10-11.) If true, such allegations could support the intent element of a false arrest claim if that false information in fact instigated the subsequent arrest. *See Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2019) (explaining that defendants "summoned the police" and provided fabricated evidence, which in turn caused the arrest of plaintiff). But the complaint does not establish, nor can the Court infer without more, that the false information provided to authorities is what caused them to arrest Pagan. *Cf. Moritz*, 2016 WL 3248494 at *4 (denying motion to dismiss false arrest claim where defendant "knowingly made false statements" to police and those false statements were "memorialized in an affidavit to support a criminal charge of stalking against [p]laintiff"). In other words, Plaintiffs have failed to plausibly aver that Gerow or the Officers "affirmatively procured or instigated [Pagan's] arrest." *Wright*, 2017 WL 253486 at *9. As Plaintiffs have failed to "nudge[] their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the Court GRANTS Defendants' motion to dismiss Plaintiffs' false arrest claims.[3]

---

[3]     Plaintiffs also maintain that Gerow, the Officers, and others "planted evidence" and for several months "[threw] poison and other substances in order to frame Plaintiffs and get their animals sick." (Compl. ¶¶ 10-11.) The complaint further states that Pagan's arrest was related to charges of animal cruelty. (*Id.* ¶ 11.) It is true that "[w]hen planted evidence is the basis for an arrest," such conduct could expose an individual to liability for false arrest. *See Hill v. Melvin*, No. 05 Civ. 6645(AJP), 2006 WL 1749520, at *11 (S.D.N.Y. June 27, 2006). To this end, the Court observes that, although farfetched as currently pleaded, Plaintiffs' claims could conceivably show that the individual defendants' conduct procured Pagan's arrest if enough facts supported the claim's plausibility. *See Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 342 (S.D.N.Y. 1999) ("As to the false arrest claims, the defendants argue that the claims must be dismissed because the discovery of a razor blade in plaintiff's belongings created probable cause for her arrest. This might exonerate other officers involved in the arrest, but

## B. Claims of Unreasonable Search and Seizure

The complaint appears to assert two search and seizure claims. *First*, Bar-Levy contends that his two German Shepherds were taken improperly. (Compl. ¶ 9.) *Second*, Pagan avers that his 200 farm animals were improperly seized during his arrest. (*Id.* ¶ 11.) In response, Defendants argue that Plaintiffs fail to establish "ownership or control of the animals or farm premises which [were] searched" or that any seizure was otherwise wrongful. (Defs. Mot. 6.) The Court assesses these contentions below.

### i. Seizure of Bar-Levy's German Shepherds

A plaintiff alleging an unreasonable search and seizure under the Fourth Amendment must establish, preliminarily, that he or she "personally ha[d] an expectation of privacy in the place searched, and that [the] expectation [was] reasonable." *Tobias v. Cty. of Putnam*, 191 F. Supp. 2d 364, 373 (S.D.N.Y. 2002) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)); *Gem Fin. Serv., Inc. v. City of New York*, 298 F. Supp. 3d 464, 479-80 (S.D.N.Y. 2018) ("Generally, as a threshold matter, there must be a reasonable expectation of privacy in the places or items for there to be a search or seizure within the meaning of the Fourth Amendment."). Here, Bar-Levy contends that Gerow "unlawfully seized" his two German Shepherds. Yet Bar-Levy provides no facts about *where* this alleged seizure took place, whether he was present during the seizure, or whether Gerow knew that he owned the dogs. The location, in particular, could implicate the degree of Fourth Amendment protection accorded to Bar-Levy (if any), especially if his German Shepherds were found and taken in a public area. *Cf. United States v. Mazzara*, No. 16 Cr. 576 (KBF), 2017 WL 4862793, at *9

---

it is irrelevant to [the] defendants . . . who are accused of 'planting' the blade."). Here, however, Plaintiffs' current factual averments, even when liberally construed, do not "raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555. Any such claims arising out of the spreading of poisonous substances are therefore DISMISSED.

(S.D.N.Y. Oct. 27, 2017) (explaining that "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection" (quoting *Katz v. United* States, 389 U.S. 347, 351 (1967))); *Stone v. Port Auth. of N.Y. and N.J.*, No. 11-CV-3932 (SMG), 2014 WL 3110002, at *11 (E.D.N.Y. July 8, 2014) (explaining, on summary judgment, that "the officers did not infringe on [plaintiff's] constitutional rights when they walked through the public areas of the restaurant, because [plaintiff] had no reasonable expectation of privacy in spaces open to the public"). Without more, the Court cannot reasonably infer, even when liberally construing the allegations, that Bar-Levy's dogs were seized in a situation that infringed the Fourth Amendment. The Court GRANTS Defendants' motion to dismiss Bar-Levy's search and seizure claims.

### ii. Seizure of Pagan's Farm Animals

It appears from the face of the complaint that Pagan has intended to plead a claim for improper search and seizure of his farm animals. (Compl. ¶ 11.) Defendants, in seeking dismissal, maintain that his claims as non-viable. (Defs. Mot. 6.) The Court agrees.

The Court initially notes that any claim related to an improper search and seizure does not allege that either Gerow or the Officers were involved in the purported seizure of Pagan's animals. Accordingly, any claim against those defendants seemingly fails for lack of personal involvement. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

In any event, even if Gerow or the Officer were involved, Pagan's claim is still deficient. Indeed, the complaint does not state whether the "seizure occurred without a warrant or, alternatively, was pursuant to a defective warrant," or "even . . . who conducted the seizure." *Romano v. City of New York*, No. 09-CV-604 (ENV), 2009 WL 1941912, at *2 (E.D.N.Y. July 6, 2009) (holding that plaintiff did not plead enough facts about the allegedly unlawful search or seizure that could plausibly

establish that the city was liable for monetary damages). "While [the Court] must liberally construe the pleadings of [the] *pro se* [P]laintiff[s], [it] cannot merely assume that [Plaintiffs] meant to allege that [] [D]efendants" acted without a warrant without probable cause or pursuant to a defective warrant. *Hudson Valley Black Press v. I.R.S.*, 307 F. Supp. 2d 543, 547 (dismissing Fourth Amendment *Bivens* claim where complaint merely alleged that "all the accountants [sic] records were seized and taken into custody by the defendant" but did not state that plaintiff's property "was seized int eh course of a warrantless search or that the agents seizing the property were acting under a defective warrant"). As Pagan fails to plead sufficient facts to establish a plausible cause of action, the Court GRANTS Defendants motion to dismiss Pagan's wrongful search and seizure claim.[4]

## II. Plaintiffs' Fourteenth Amendment Claims against Individual Defendants

### A. Equal Protection Claim

Liberally construing Plaintiffs' complaint, the Court can discern a potential selective enforcement claim against Defendants. Specifically, Plaintiffs seem to allege that Defendants selectively enforced county codes and state criminal laws against Plaintiffs because they practice Judaism. (*See* Compl. ¶¶ 8-10, 16-17, 19.) Defendants argue, however, that to the extent Plaintiffs assert a selective enforcement claim, they fail to allege a similarly situated comparator who may have been subjected to more favorable treatment. (Defs. Mot. 4-5.) The Court agrees.

To properly plead a selective enforcement claim in violation of the Equal Protection Clause, a plaintiff must proffer sufficient factual allegations supporting "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

---

[4]      Even had Plaintiffs alleged that the seizure was done pursuant to a defective warrant, they still face another hurdle. Specifically, an officer "who relies in good faith on a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by qualified immunity." *See Simms v. Vill. of Albion*, 115 F.3d 1098, 1106 (2d Cir. 1997). The Court need not, and in fact cannot, reach this issue on the presently pleaded facts.

constitutional rights, or malicious or bad faith intent to injure a person." *Tyk v. Surat*, 675 F. App'x 40, 42 (2d Cir. 2017) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)). A plaintiff "must satisfy both elements to establish a claim of selective enforcement." *LaTrieste Restaurant v. Vill. of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999). Notably, under the first prong of the selective enforcement analysis, a plaintiff must identify a similarly situated comparator and, second, he or she must show that, compared with others similarly situated, he or she was treated differently. *See Tower Props. LLC v. Vill. of Highland Falls*, No. 14 Civ. 4502 (NSR), 2017 WL 519267, at *4 (S.D.N.Y. Feb. 7, 2017).

Here, Plaintiffs merely contend that Defendants targeted them because they are Jewish. They do not allege any other comparator to which this Court can look to infer a selective enforcement scheme, let alone that Plaintiffs were treated differently than the unidentified comparator. Without more facts, Plaintiffs' complaint plainly fails to state a claim upon which this Court can grant relief. The Court GRANTS Defendants' motion to dismiss Plaintiffs' selective enforcement claims.

### B. Due Process Claim

As Defendants note, Plaintiffs appear to plead a Fourteenth Amendment due process claim. (Compl. ¶ 21.) However, in general, where "'a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see also Harris v. City of New York*, No. 16-CV-1214 (PKC)(JO), 2018 WL 4471631, at *10 n.17 (S.D.N.Y. Sept. 18, 2018) ("To the extent that Plaintiff attempts to assert a separate substantive 'due process' deprivation of liberty claim based on the same conduct that underlies her Fourth Amendment claims for false arrest or unlawful strip search, this claim is dismissed as duplicative."). Therefore, to the extent Plaintiffs' due process claims overlaps with their

improper seizure and false arrest claims under the Fourth Amendment, the Court GRANTS

Defendants' motion to dismiss those due process claims, with prejudice.

## III.     Plaintiffs' Claims Against Liberty

In addition to their allegations against Gerow and the Officers, Plaintiffs also assert claims

against Liberty for the same violations, noting the existence of alleged policies, practices, and customs

targeting the Jewish residents of Liberty.  (*See* Compl. ¶¶ 14-19.)  Defendants counter that the

complaint merely contains "formulaic, conclusory or boilerplate type allegations" setting forth a

policy or custom, which is not enough to plead the existence of a municipal policy.  (Defs. Mot. 10-

11.)  The Court agrees.

Under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978), a plaintiff must

demonstrate "that the municipality itself caused or is implicated in the constitutional violation."

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).  This generally requires a

plaintiff to allege that "(1) an official custom or policy [] (2) subjected [him or her] to (3) a denial of

a constitutional right."  *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also*

*Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a

municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove:

(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3)

causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional

injury.").  To establish an official custom or policy, a plaintiff must first allege one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread that,
> although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers to
> provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*White v. Westchester Cty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

Critically, it is not enough to merely "recite the elements for stating a *Monell* claim." *Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (collecting cases). Rather, to "successfully state a claim for *Monell* liability, a plaintiff must 'make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality.'" *Id.* (quoting *Missel v. Cty. of Monroe*, 351 F. App'x 543, 545 (2d Cir. 2009)).

Here, even if liberally construed, Plaintiffs' *Monell* claim fails. Plaintiffs do not proffer even a scintilla of factual support to establish the existence of a policy or custom. Instead, Plaintiffs merely allege two distinct occurrences of misconduct and then contend that Liberty has a policy or custom in place to, *inter alia*, intimidate, threaten, falsely accuse, fail to prevent illegal conduct against, and falsely charge members of Liberty's Jewish faith. (Compl. ¶¶ 16-19.) Plaintiffs advance nothing more than "the kind of boilerplate allegations that are not entitled to a presumption of truth on a Rule 12(b)(6) motion to dismiss." *Grantley v. City of New York*, No. 12 Civ. 8294(KBF), 2013 WL 6139688, at *3 (S.D.N.Y. Nov. 21, 2013). The Court accordingly GRANTS Defendants' motion to dismiss Plaintiffs' *Monell* claims against Liberty.

## IV.  Leave to Amend

The Second Circuit has instructed that "'[a] *pro se* complaint should not be dismissed without [] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim may be stated.'" *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013)). Although the Court views some of the presently alleged claims against Defendants as remarkably dubious, it is unable to

conclude beyond a shadow of a doubt that Plaintiffs cannot in anyway state a valid claim under a liberal reading of the current complaint. Therefore, Plaintiffs are granted leave to amend any claims that were not dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED. Plaintiffs are granted leave to file an Amended Complaint, consistent with this Opinion and Order, as to any claims that have not been dismissed with prejudice. Plaintiffs will have until April 6, 2020 to file their Amended Complaint. Failure to file an Amended Complaint within the time allowed, and without good cause to excuse such failure, will result in the dismissal of the remainder of Plaintiffs' complaint with prejudice. If Plaintiffs file an Amended Complaint, Defendants are directed to answer or otherwise respond by May 6, 2020.

The Court respectfully directs the Clerk of the Court to terminate the motion at ECF No. 11. The Clerk is further directed to mail copies of this Opinion and Order to *pro se* Plaintiffs at the addresses listed on ECF and to show proof of service on the docket.

Dated: February 19, 2020                               SO ORDERED:
        White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge